**PACIFIC EMPLOYERS INSURANCE COMPANY, Appellant,**

v.

**Kenneth Edward GIBSON, Appellee.**

**No. 16931.**

Court of Civil Appeals of Texas.

Dallas.

July 7, 1967.

Rehearing Denied Sept. 29, 1967.

Royal H. Brin, Jr., and Patrick F. Mc-Gowan, of Strasburger, Price, Kelton, Martin & Unis, Dallas, for appellant.

Herbert L. Hooks, of Gibbs, Hooks & Wyrick, Dallas, for appellee.

CLAUDE WILLIAMS, Justice.

Alleging that he had sustained the total loss of use of his left leg as a result of an injury which happened on January 26, 1960 while working as a carpenter in Dallas County, Texas, Kenneth Edward Gibson brought this action pursuant to the Workmen's Compensation Law of Texas (Art. 8306, et seq., Vernon's Ann.Civ.St.) against his employer's insurance carrier, Pacific Employers Insurance Company, seeking to recover the statutory benefits for such dis-ability. The case was tried to a jury which returned a verdict favorable in all respects to Gibson. The trial court rendered judgment in favor of appellee for total loss of the use of the leg for a period of 200 weeks. Appellant insurance company appeals.

The primary basis of appellant's assault on the judgment is the refusal of the trial judge to strike from the record the testimony of Dr. Loiselle, appellee's only expert medical witness. Appellant contends that since the record reveals without controversy that Dr. Loiselle examined appellee only on one occasion for the purpose of enabling him to render an opinion, and not to treat appellee, his testimony as to appellee's physical condition and estimate of disability, which were admittedly based upon the history of the case and subjective symptoms given to him by appellee, was not admissible. A careful review of the entire record in the light of the applicable authorities lead us to the inescapable conclusion, and we so hold, that the trial court did commit error in this respect and that the judgment must therefore be reversed.

Appellee sustained the injury to his left knee while working as a carpenter in 1960. His employer took him to the Chester Clinic where he was examined by Dr. Sharp who x-rayed his knee and put him on crutches for two weeks with an elastic band around his leg. He was also examined by Dr. Booth at the clinic who drew off some fluid from his knee. He returned to work in about two weeks wearing a leg bandage. His knee condition caused him to work much slower than before. His knee continued to bother him and the insurance company sent him to Dr. Herrick who x-rayed his knee and examined him. He later saw Dr. Knight, another bone specialist. In 1964, about four years after he had been

injured, he went to see Dr. Loiselle. When asked why he went to see Dr. Loiselle he said that a friend had recommended him as being a good doctor. He also testified that he went to Dr. Loiselle "to get a view of a doctor that wasn't associated with an insurance company, one that they didn't send me to." He said he did not ask Dr. Loiselle to treat him for his injuries.

Dr. Loiselle testified that he saw appellee on one occasion which was May 8, 1964; that he obtained a complete history from Mr. Gibson which included a statement as to how he had hurt himself and his various complaints. He then gave appellee a physical examination, including x-rays of the knee. He had never seen Mr. Gibson before nor did he see him any time after the May 8th examination. Based upon the history of the case given by Mr. Gibson, together with the subjective symptoms and findings alone, he rendered an opinion that Mr. Gibson was suffering a disability to his left knee related to the accident in 1960. He was allowed to give his opinion to the effect that due to this injury and incapacity Mr. Gibson was unable to perform work as a carpenter over an extended period of time.

On cross-examination Dr. Loiselle admitted that he had not treated Mr. Gibson and had not been asked to give him treatment. He further testified that he based his opinion concerning loss of use of the leg solely upon the history of the case given by Mr. Gibson together with subjective symptoms. He stated that there were no objective symptoms or findings evident from the physical examination or x-rays made of the knee. Thereupon, counsel for appellant moved the court to strike from the record the testimony of Dr. Loiselle and to instruct the jury not to consider same. The basis for such motion was that the doctor's testimony was obviously based upon hearsay, i. e., the history of the case given by the patient together with subjective symptoms, and that since he was only the examining doctor, and not the treating doc-

tor, such testimony was inadmissible. The trial court overruled such motion.

The record reveals that at the time the examination was made by Dr. Loiselle in May 1964 the suit had not been filed in the district court but claim for compensation had been pending and the insurance company, appellant herein, had made at least one weekly payment of compensation. Mr. Gibson had not disposed of his claim for compensation and was represented by attorney Hooks at the time he went to see Dr. Loiselle.

■ The rule of law governing this situation is firmly established in our jurisprudence and is set forth in 63 Tex.Jur.2d § 447, p. 483, as follows:

> "A doctor who is not a treating physician, and who examined the patient only for the purpose of making a report and testifying if necessary, cannot base his opinion as to the condition of the patient on the history of the case as related to him by the patient. It must be based on a study of objective symptoms and X rays."

The rationale of this rule was developed many years ago and was clearly enunciated by the court in Gaines v. Stewart, 57 S.W.2d 207 (Tex.Civ.App., Austin 1933), which involved a case in which the doctor examined the injured party not for treatment but to enable him to testify as a witness. The court in holding the doctor's opinion testimony inadmissible said:

> "The test in such case appears to be whether the motive and opportunity to fabricate without detection the symptoms complained of is presented. Undoubtedly a qualified physician can testify as to symptoms and conditions of injury or disease made known to or discovered by him in his treatment of his patient. Or to such conditions as he finds in the patient from his own independent examination of him. But where an injured party, for the express purpose of qualifying a physician to testify in his be-

half about matters on which such party seeks a recovery, makes statements as to subjective matters of pain, suffering, etc., not disclosed to the physician by other and independent means, there exists both motive and opportunity for the patient to magnify or feign injuries. Under such circumstances his statements become clearly self-serving and hearsay, and should not be admitted."

Again, Justice Leslie of the Eastland Court of Civil Appeals in Texas Employers' Ins. Ass'n v. Wallace, 70 S.W.2d 832 (Tex. Civ.App., Eastland 1934), expressed the reasoning behind the rule which prohibited the testimony of the examining physicians, as follows:

"We are of the opinion that the foregoing testimony, admitted over said objections, was inadmissible. The doctor's opinion was based in some undetermined measure, and in part, at least, upon hearsay statements made to him by the injured employee. It is a sound rule of law which prohibits the introduction of such testimony. The opinion of an expert should not be permitted to go to a jury when the same is predicated in whole or in part, upon the unsworn statement of an interested party who may be tempted to unduly magnify the basis or grounds upon which the validity of the opinion depends. To permit the expert's opinion, based upon such statements pertaining to history of case and subjective symptoms, to go before the jury, would open the door for the grossest fraud by affording the litigant an opportunity to magnify his injuries or suffering and enhance the damages by incompetent, self-serving statements in effect carried before the jury by the expert and bolstered up by his opinion."

The same rule of law was applied in Traders & General Ins. Co. v. Chancellor, 105 S.W.2d 720 (Tex.Civ.App., El Paso 1937, writ dism'd), which involved the testimony of a doctor who stated that he examined the injured employee for both diagnosis

and treatment, but had not treated the man. The court, in sustaining the objection to the admissibility of such doctor's opinion evidence, said:

"* * * Dr. Kiel testified he examined Chancellor for diagnosis and treatment, but had not treated him. His testimony also shows his testimony as to appellee's condition was based in part upon objective symptoms which he found, and in part upon the history of the case and subjective symptoms as related to him by appellee. Since the evidence shows Dr. Kiel based his opinion as to appellee's condition in part upon subjective symptoms and the history of the case as related to him by appellee, his said opinion was inadmissible."

This rule of law has been recognized and followed uniformly by our courts to the present time. Federal Underwriters Exchange v. Arnold, 127 S.W.2d 972 (Tex. Civ.App., Fort Worth 1939, writ dism'd); Republic Underwriters v. Lewis, 106 S.W.2d 1113 (Tex.Civ.App., Beaumont 1937); Traders & General Ins. Co. v. Rhodabarger, 93 S.W.2d 1180 (Tex,Civ.App., El Paso 1936); Texas Employers' Ins. Ass'n v. Morgan, 187 S.W.2d 603 (Tex.Civ.App., Eastland 1945, writ ref'd w. o. m.); Texas Employers' Ins. Ass'n v. McMullin, 279 S.W.2d 699 (Tex.Civ.App., San Antonio 1955, writ ref'd n. r. e.); Texas Employers' Ins. Ass'n v. Wells, 207 S.W.2d 693 (Tex. Civ.App., Amarillo 1947, writ ref'd n. r. e.); Liberty Mutual Ins. Co. v. Taylor, 376 S.W.2d 406 (Tex.Civ.App., Dallas 1964); 65 A.L.R. 1219.

This record convinces us that not only was the opinion testimony of Dr. Loiselle erroneously admitted but that it was reasonably calculated to cause, and probably did cause, the rendition of an improper verdict and judgment in this case. Dr. Loiselle was appellee's only medical witness and it clearly supported appellee's position concerning disability. Appellant presented the testimony of two doctors who gave their opinions which were contrary to that

opinion expressed by Dr. Loiselle. Certainly Dr. Loiselle's opinion testimony must have carried great weight with the jury under such circumstances.

Moreover, this testimony by Dr. Loiselle was not cumulative of other testimony of the same kind or character. It cannot be said to have been cumulative of the testimony of appellee himself since it came from an expert in the field of medicine. His testimony concerning possible tearing of cartilages in the knee as well as other medical phases of the case was reasonably calculated to capture the attention of the jury. Dr. Loiselle's opinion and diagnosis of appellee's condition were potent evidence indeed and the admission thereof cannot logically be claimed to be harmless. Pittman v. Baladez, 158 Tex. 372, 312 S.W.2d 210 (1958); Casualty Ins. Co. v. Salinas, 160 Tex. 445, 333 S.W.2d 109, 90 A.L.R.2d 1056 (1960); Rule 434, Texas Rules of Civil Procedure.

Appellant's first point is sustained.

By its second point appellant complains of the action of the trial court in refusing to permit it to introduce certain testimony to the effect that appellee had a twenty-year history of a bad *right* knee. As a general rule testimony concerning other injuries to other parts of the body than that presently complained about is not relevant and material. This is especially true where the prior injuries are non-compensable. However, we see no reversible error presented by appellant's second point for the simple reason that the trial court, after refusing appellant's counsel permission to cross-examine Dr. Loiselle concerning the prior injuries to the right knee, apparently changed his mind and ruled that appellant's counsel might interrogate appellee himself concerning the injury to the right knee which had occurred sometime before. Thereupon appellant's counsel did not take advantage of the opportunity to follow the line of interrogation. Appellant's second point is overruled.

Appellant's third and fourth points complain of "no evidence" or "insufficient evidence" to sustain the jury's findings to the issue relating to total loss of use of the left knee. In view of our action in sustaining appellant's first point, thereby requiring a reversal and retrial of this case, we see no useful purpose in discussing these points.

The judgment of the trial court is reversed and remanded for a new trial.