The MILLER MUTUAL FIRE INSURANCE
COMPANY OF TEXAS, Appellant,

v.

Michael OCHOA, Appellee.

No. 412.

Court of Civil Appeals of Texas.
Corpus Christi.
Sept. 12, 1968.
Rehearing Denied Oct. 3, 1968.

Guittard, Henderson, Jones & Lewis, O. F. Jones, Victoria, for appellant.

Robert J. Seerden, Victoria, for appellee.

## OPINION ON MOTION FOR REHEARING

NYE, Justice.

The original opinion is withdrawn and the following opinion is substituted therefor.

The Miller Mutual Fire Insurance Company of Texas has appealed from a judgment awarding Michael Ochoa total and permanent workmen's compensation benefits. The case was tried before a jury which answered special issues upon which the judgment was based.

Appellant's principal contention is that this judgment of the trial court should be reversed because of the error of the trial court in admitting into evidence before the jury the testimony of Dr. George Constant that, in his opinion, and based upon medical probabilities the claimant was total-

ly and permanently disabled to labor. In this connection the appellant contends that Dr. Constant did not treat Ochoa at any time; that since he had only seen Ochoa on one occasion for a very short period of time he was not competent to render an opinion as to Ochoa's disability. Appellant contends further than Dr. Constant's testimony, based in part upon clinical and subjective history given to his clinical historian and described to him by the patient during the time of his examination, makes his opinion purely hearsay and therefore inadmissible. Citing Gaines v. Stewart, 57 S.W.2d 207 (Tex. Civ.App.—Austin 1933, n. w. h.); Texas Employers' Insurance Ass'n v. Wallace, 70 S.W.2d 832 (Tex.Civ.App.—Eastland 1934, n. w. h.); Traders & General Insurance Co. v. Chancellor, 105 S.W.2d 720 (Tex.Civ.App.—El Paso 1937, wr. dism.); Pacific Employers Insurance Co. v. Gibson, 419 S.W.2d 239 (Tex.Civ.App.—Dallas 1967).

The record before us shows that appellee had a seventh grade education and was employed as a paint stripper by the Gary Aircraft Company near Victoria, Texas. His job required him to stoop, bend and lift and perform all of the ordinary tasks of a laborer. Appellee testified that on October 12, 1966 he fell approximately eight feet off of an airplane wing onto the concrete floor, landing on his head and shoulders; that from that time on he had pain to his back, head, shoulders and neck and had been unable to do manual labor. As a result of this fall he was rendered unconscious for a brief period of time immediately following this accident. The testimony of appellee and other witnesses and from the company's records, revealed that the appellee had worked for the company from November 5, 1965 until the day of the accident and had only missed one day, one hour, and fifteen minutes from his employment, excepting only three days vacation. The evidence further showed that after his injury he had attempted to return to work but had had a long history of missing work and parts of days of work, until May 24, 1967, on which day he was discharged from his employment.

The appellee was seen originally by Dr. Ted Shields on behalf of his employer and its insurance company. After this initial visit to Dr. Shields' office, Dr. Jerome C. Hohf, Dr. Everett Ware and Dr. Jerry Crabtree treated the appellee. Later, he was seen by Dr. George C. Constant. The appellee offered the testimony of two of these doctors. The first was Dr. Jerome C. Hohf. Dr. Hohf treated the appellee for over seven months. He testified that the appellee had a sprain of the cervical spine and low back and that in his opinion this condition was a result of the injury which he sustained on October 12, 1966. The doctor testified in great detail as to the treatment that he had prescribed for the appellee over this seven-month period. This included various drugs, a lumbo-sacral support, x-rays, muscle relaxants, and other medications. Various x-rays were made and laboratory studies were conducted and described in detail. The doctor testified that for three months the appellee had shown a progressive pattern of improvement, but that after that, the patient failed to respond despite the various treatments instituted. He concluded that appellee should have psychiatric evaluation and that further consultation should be obtained. He finally stated that in his opinion appellee's condition was not then due to any physical cause, but was due to a mental problem. To quote Dr. Hohf, he said:

"In my opinion the pain at this time of course is conditioned, wasn't due to a physical cause. It was a mental problem commonly spoken of as functional overlay which simply means there is a physical basis for the onset of the pain and to some degree for its continuation but the degree and magnitude of the pain is far over and above any physical or objective findings you can find in examining the patient either in the laboratory, by x-ray or by physical examination.

Q Doctor, when you say there was a physical basis for the pain in this particu-

lar instance what was the physical basis for this pain?

A   The original injury sustained in October of 1966."

Dr. Hohf testified in full that he was of the opinion that appellee was not a malingerer; that he was not faking pain in this instance; that when he last saw him he was suffering real pain and was suffering from physical disability to labor. Further Dr. Hohf said that appellee had a real mental disability and this can be just as disabling as a physical disability.

The next doctor to testify was Dr. George C. Constant. The appellee had testified previously without objection that he was referred to Dr. Constant by Dr. Crabtree. Dr. Constant was qualified as a medical expert in the field of psychiatry. He testified that he examined the appellee after he had been called by Dr. Crabtree for consultation. He procured the patient's history from the appellee and did what the doctor described as a neurological and a psychiatric examination. The doctor circumstantiated the neurological examination and the psychiatric examination. He testified that in his judgment the appellee was suffering with low back sprain precipitated by what is known as a conversion reaction. This is called a traumatic neurosis. In this connection the doctor developed the causes and effects of traumatic neurosis which he diagnosed as being the result of the injury that Ochoa sustained on October 12, 1966. He testified that the patient was suffering from pain; that it was a disabling condition which would disable him from performing the ordinary tasks of a working man. He testified further that in his opinion and based upon reasonable medical probability that this disability would be a total disability with respect to the performing of the customary tasks of the working or laboring man. The doctor stated that this disability would be permanent if his present condition continued without further psychiatric treatment. On cross examination he testified that the appellee had had the injury which caused the low back muscle sprain and muscle spasm. This, along with his head injury caused him to have a conversion reaction which in turn has kept the back injury going. In other words, the doctor said that if he didn't have the conversion at this time, the low back sprain and spasms would have been healed by now; that the conversion reaction of appellee was not being faked; that he was not a malingerer. He described malingering as being conscious deception, whereas, a conversion reaction was subconscious.

The appellant contends that the testimony of Dr. Constant concerning his opinion as to the extent of the appellee's disability and its duration, was based entirely upon the claimant's history as relayed to him by the claimant, and the claimant's relationship of his aches, pains, complaints, abilities and inabilities to do labor. As such, appellant argues that this is clearly hearsay. Therefore this ex parte testimony by the claimant in relaying his history to the doctor, does not gain credibility, just because the doctor as a specialist, testifies.

It is true that Dr. Constant did make some subjective findings and received the personal history from the patient. However, the doctor testified extensively that his examination included many objective findings which assisted in formulating his opinion. For instance, he testified that objectively he found an area of tenderness in the low back, being a spasm of the low back muscles. His psychiatric examination and treatment which he performed on the appellee included many negative physical findings and necessarily included some subjective findings. Dr. Constant prescribed future psychiatric treatment for the appellee. Concluding his testimony, he said that appellee should have somatic treatment, which is a type of treatment designed to restore a man to health with physical insulin therapy. The doctor described the procedure as being complicated, a major form of psychiatric treatment that has some dangers attentive to it. He testified that the treatment included a series of injections

whereby the person is put into a coma not unlike the effects of an anesthetic. The results are not always satisfactory, but appellee needed this treatment.

There was no objection to any of Dr. Constant's testimony. At the conclusion of all this testimony the attorney moved to have Dr. Constant's testimony stricken insofar as the doctor has related his opinion as to the future prognosis of appellee, and to whether or not he was going to be disabled in the future or as to the length of time of such disability. Appellant reasoned that the doctor's opinion was based entirely upon subjective findings and history obtained from the appellee and was therefore hearsay. The court overruled the objection. Appellant argues here that Dr. Constant's testimony is clearly inadmissible and that without his testimony the jury findings are unsupported by any evidence, and/or are against the great weight and preponderance of the evidence.

We are not unmindful of the rule of law that "a doctor who is not a treating physician and who examined the patient only for the purpose of making a report and testifying if necessary, cannot base his opinion as to the condition of the patient on the history of the case as relayed to him by the patient. It must be based on a study of objective symptoms and x-rays. However, the Texas Supreme Court said:

"It is generally, though not universally, held that statements by an injured or diseased person to a physician as to past matters, while not admissible as evidence of the facts stated, may be testified to by the physician to show the basis of his opinion."

(Quotation from 67 A.L.R. 18) Walker v. Great Atlantic & Pacific Tea Co., 131 Tex. 57, 112 S.W.2d 170 (1938).

The record shows that two doctors, Dr. Hohf and Dr. Crabtree, testified that appellee needed psychiatric help. Appellee Ochoa was referred to Dr. Constant by his then treating doctor for psychiatric examination and *treatment*. (emphasis supplied)

Dr. Constant testified that Ochoa needed a major form of psychiatric treatment which has certain dangers attentive to it. On cross-examination by appellant's attorney, Dr. Constant testified:

"Q   Doctor, you mentioned you can benefit him (Ochoa) by treatment?

A   I hope so. I don't know whether I can until I try.

Q   The chief thing you have to do in treatment of this kind is eliminate the secondary gain is it not?

A   No, the first thing in order to get him well, and in this situation where it has been going on this long, getting rid of the secondary gain isn't going to get the job done I don't think. I could be wrong, but I think this gentleman is going to have to have somatic treatment."

On re-direct examination the question was asked:

"Q   (by Mr. Seerden)   Now, Doctor, this treatment Mr. Jones talked to you about, what type treatment did you say this man needs?

A   (by Dr. Constant)   Somatic. That merely means the type of treatment designed to restore this man back to health through physical therapy. Insulin therapy."

There was no objection or challenge by appellant to any of these statements by Dr. Constant. It was undisputed that Ochoa was not malingering but wanted to get well. It is said that where a patient is interested mainly in getting well there is little motive for the giving of false or questionable case history to the doctor. Liberty Mutual Insurance Company v. Taylor, 376 S.W.2d 406 (Tex.Civ.App.—Dallas 1964); Ft. Worth & Denver Railway Company v. Coffman, 397 S.W.2d 544 (Tex.Civ.App.—Ft. Worth 1965), and cases cited; Liberty Insurance Company of Texas v. Land, 397 S.W.2d 900 (Tex.Civ.App.—Ft. Worth 1965).

Appellant produced no evidence nor did it attempt to contradict any of the historical information or statements of past matters given by appellee to the doctor which were related by the doctor's testimony. There was no evidence that appellee was sent to Dr. Constant for the purpose of getting the doctor to testify or render an opinion as a result of the examination. It has been held by many of our Texas appellate courts that the opinion of the physician as to the condition of an injured person is not rendered incompetent by the fact that it is based upon the history of the case given by the patient to the physician on the examination of the patient, when the examination was made for the purpose of treatment and care of the patient. Austin Road Company v. Thompson, 275 S.W.2d 521 (Tex.Civ.App.—Ft. Worth 1955, n. r. e.) and many cases cited therein. Where the examination was made for the purpose of prescribing treatment, a doctor may testify as to the complaints of the patient made during the course of the examination as to both subjective and objective symptoms. 63 Tex.Jur.2d, Sec. 447 at 484 and cases cited therein. Texas General Indemnity Co. v. McNeill, 261 S.W.2d 378 (Tex.Civ.App.—Beaumont 1953); Fort Worth and Denver Railway Company v. Coffman, 397 S.W.2d 544 (Tex.Civ.App.—Ft. Worth 1965), and cases cited, and Liberty Insurance Company of Texas v. Land, 397 S.W.2d 900 (Tex.Civ.App.—Ft. Worth 1965).

The testimony of Dr. Hohf showed that appellee had a psychiatric condition that was disabling. This testimony, as well as the testimony of the appellee and other lay witnesses, established that the appellee had been disabled for a great length of time. It was reasonable for the jury to presume from all of such testimony that his disability would continue permanently. The appellant offered no medical testimony to contradict any of the above related evidence as to the appellee's condition. Dr. Constant's testimony was in effect cumulative of the other competent evidence admitted in the case. We hold under the facts here presented that Dr. Constant's testimony was properly admitted. In any event if the trial court was in error in admitting such evidence it was not reversibly harmful to appellant under Rule 434 Texas Rules of Civil Procedure. It is not reasonably probable that Dr. Constant's testimony persuaded the jury to its verdict, when this testimony was cumulative to all of the other evidence in the record. Loper v. Andrews, 404 S.W.2d 300 (Tex. Sup.1966).

Appellant in other points attacks the right of appellee to recover for conversion reaction with traumatic neurosis and argues that such condition is not a recoverable condition under the workmen's compensation law. Appellant concedes, however, that the decision of the Supreme Court in allowing a workmen's compensation recovery for similar injuries in Hood v. Texas Indemnity Ins. Co., 146 Tex. 522, 209 S.W. 2d 345 (1948) and Bailey v. American General Insurance Company, 154 Tex. 430, 279 S.W.2d 315 (1955), has not been overruled, but argues that a conversion reaction is not foreseeable and that a tort liability for such condition was denied in Kaufman v. Miller, 414 S.W.2d 164 (Tex.Sup.1967). This is a suit for recovery of sums due on an insurance policy and the rights of the parties are clearly fixed by the terms of the policy and the Workmen's Compensation law. The Kaufman v. Miller case, supra, is not in point.

We have carefully considered all of appellant's points and find them without merit.

Judgment of the trial court is affirmed.

Motion for rehearing is overruled.

GREEN, Chief Justice (concurring).

I concur in Judge NYE'S opinion, and agree that for reasons therein stated the judgment should be affirmed, except that I believe that it *is* reasonably probable that Dr. Constant's testimony there referred to was very persuasive with the jury as to

the verdict it returned. He was the only medical witness who expressed the opinion that appellee was totally and permanently injured. I do not feel that Rule 434 is applicable to such evidence.

However, I agree that the trial court properly overruled appellant's motion to strike Dr. Constant's evidence concerning the future disability of appellee, both as to extent and length. The judgment should be affirmed.

SHARPE, Justice (concurring in result).

I concur in the result.